# 21-2491-cr(L),
# 21-2946-cr(CON), 21-3082-cr(CON), 22-0371-cr(CON)

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

PRINCE UKO, AKA Sealed Defendant 1, JACOB SAGIAO,
AKA Sealed Defendant 1, MARYLYNN PENEUETA, BRITT JACKSON,
JOSHUA FITTEN, DONTAE COTTRELL, AKA Dontae Coterell, ARINZE
OBIKA, NDUKWE ANYAOGU, DAVID URO, AKA Victor Ahaiwe,
SUNDAY OKORO, COLLINS ENEH,

*Defendants,*

HERMAN BASS, IKECHUKWU ELENDU,
VICTOR AHAIWE, AKA Herman Bass,

*Defendants-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT HERMAN BASS
### Pursuant to *Anders v. California*, 386 U.S. 738 (1967)

JOHN S. WALLENSTEIN
LAW OFFICE OF JOHN S. WALLENSTEIN
*Attorneys for Defendant-Appellant*
  *Herman Bass*
1100 Franklin Avenue, Suite 305
Garden City, New York 11530
(516) 742-5600

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………..ii

JURISDICTIONAL STATEMENT.....................………………………………………..1

STATEMENT OF THE CASE…………………………………………………………...2

    FACTS…………………………………………………………………………...2

    THE PROCEEDINGS IN DISTRICT COURT …………………………......4

    THE PLEA AGREEMENT AND APPELLATE RIGHTS WAIVER………......6

    THE PLEA PROCEEDING AND ALLOCUTION……………………………8

    SENTENCING SUBMISSIONS……………………………………………15

    THE SENTENCING HEARING…………..…………………………......16

SUMMARY OF ARGUMENT.....................................................................................18

**ARGUMENT**

    **THERE ARE NO NON-FRIVOLOUS ISSUES TO RAISE ON
APPEAL**…………………………………………………………………19

    **POINT ONE**
DEFENDANT'S PLEA AND WAIVER OF APPELLATE RIGHTS
WERE KNOWING, VOLUNTARY, AND COMPETENT…………………..19

    **POINT TWO**
THERE ARE NO OTHER ISSUES TO BE RAISED…………………….....23

    CONCLUSION…………………………………………………………...24

    CERTIFICATE OF COMPLIANCE.......……………………………….....25

i

# **TABLE OF AUTHORITIES**

## **CASES**

*Anders v. California*, 388 U.S. 738 (1967)…………………………………...19,23

*Boykin v. Alabama*, 395 U.S. 239 (1969)………………………………………..20

*Brady v. United States*, 397 U.S. 742, 755 (1970)…………………………………21

*United States v. Arevalo,* 628 F. 3rd 93 (2nd Circuit, 2010)……………………………21

*United States v. Arvanitakis*, 2020 U.S. App.LEXIS 9344 (2nd Circuit, 2020)……….21

*United States v. Gomez-Perez,* 215 F.3rd 315 (2nd Circuit, 2000)…………………19,21

*United States v. Grandia*, 18 F.3d 184(2d Circuit,1994) ........................................... 21

*Wilson v. McGinnis,* 413 F. 3rd 196 (2nd Circuit, 2005)……………………………… 20

## **STATUTES AND RULES**

*18 U.S.C. §1344*.................................................................................................4

*18 U.S.C. §1956* ...............................................................................................7

*18 U.S.C. § 1956(h)* ........................................................................................1,6

*18 U.S.C. § 1956(a)(1)(B)(i)* ............................................................................4

*18 U.S.C. § 3231*..............................................................................................1

*18 U.S.C.§ 3553(a)* .......................................................................................7, 16

*28 U.S.C. § 1291*..............................................................................................1

ii

*Rule 28 (a) F.R.A.P.* ................................................................................1

*Rule 32 (a)(7)(B).* ...............................................................................25

*Rule 32 (a) (7) (C) F.R.A.P.* .................................................................25

## SENTENCING GUIDELINES

U.S.S.G. §2B1.1 .......................................................................................7

U.S.S.G. §2S1.1(a)(2) ..............................................................................7

U.S.S.G. §2S1.1(b)(2)(B) .........................................................................7

# JURISDICTIONAL STATEMENT

This is an appeal from a final judgment [A-85][1] of the United States District Court for the Southern District of New York, (Denise L. Cote, J.) entered September 23, 2021, convicting appellant, Herman Bass (hereinafter "Bass") upon his plea of guilty to Count 2 of the indictment [A-20] filed under Docket # 20 CR 179 (DLC), charging Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h). Bass pleaded guilty to the charge pursuant to an agreement with the Government [A-29]. The District Court sentenced him to serve 30 months' imprisonment, followed by three years' supervised release, with conditions outlined in the Judgment [A-87-89]; to pay restitution to certain named victims in the total amount of $176,174.84, at the rate of 10% of his monthly income; and to pay a $100 special assessment.

Jurisdiction in the District Court was pursuant to 18 U.S.C. § 3231. A Notice of Appeal [A-92] was timely filed on October 4, 2021.

Jurisdiction in this Court is conferred pursuant to 28 U.S.C § 1291.

---

[1] Material in brackets refers to pages of the Appendix.

1

## <u>STATEMENT OF THE CASE</u>

### <u>FACTS</u>

Between March, 2019 and May, 2019 three fraudulent schemes were carried out by a number of people, including the ten defendants named in the indictment. Two of the three schemes were styled as "business email compromises", while the third was known as a romance fraud. According to the information supplied by the government, the victims of the email compromises were induced to send millions of dollars to bank accounts controlled by two of the co-conspirators. The defendants created bank accounts that listed "d/b/a/" names which closely resembled the names of actual companies. They then used phony or hacked email accounts to cause real companies to send wire transfers to these bank accounts, which the companies did because they believed that they were sending funds to legitimate business partners. The transfers of proceeds thus appeared to be transactions between real companies. The conspirators would then withdraw the funds through cashier's checks or bank checks, and laundered the funds by depositing them into other accounts created and/or controlled by members of the conspiracy (including Bass). The romance fraud worked in a slightly different manner, where the conspirators induced people seeking romantic partners on the internet to send large sums of money based on false pretenses; the money was then laundered in a similar manner

2

to the email compromise scheme. It is significant to note that Bass had a limited role in these schemes, and had nothing whatever to do with the romance fraud.

In early March, 2019, Arinze Obika caused an email to be sent to a health services company in Saint Maarten known as SZV, directing SZV to send a $500,000 wire transfer to a bank account in Brooklyn, New York which Obika had set up, bearing a name very similar to a legitimate company with which SZV regularly did business. Two days after the wire arrived, (and before SZV was notified of the transfer) Obika withdrew more than $485,000 from the account, by obtaining five cashier's checks from the receiving bank. As relevant to this appeal, on March 14, 2019, one of those checks, in the amount of $169,000, was deposited into a bank account that was opened that same day by defendant-appellant Herman Bass. That account listed as a "d/b/a" the name of a company closely resembling a legitimate California company. When Bass opened the account, he described that company as a sole proprietorship of which he was the owner. In reality, he had no connection whatever with the legitimate company.

On March 23 and March 25, 2019, Bass withdrew $100,000 of the funds from that account by drawing two personal checks on the account, payable to a person who had died months earlier. Those checks were delivered by Bass to another co-conspirator, who then deposited the checks in an account he controlled. Ultimately, Bass kept

3

approximately $64,000 of the funds for his own use.

## THE PROCEEDINGS IN DISTRICT COURT

On February 11, 2020, a Complaint was filed in the United States District Court for the Southern District of New York, in which Bass (along with nine co-defendants) was charged with Conspiracy to Commit Bank Fraud, *18 U.S.C. §1344* and Conspiracy to Commit Money Laundering, *18 U.S.C. § 1956(a)(1)(B)(i)*. Other defendants had additional charges, including Wire Fraud and Aggravated Identity Theft, but Bass was not charged with those crimes. He was arrested in California (where he resides) on February 20, 2020, and eventually transported to New York. The Indictment [A-20] was filed on March 4, 2020, charging the same two conspiracies, but it should be noted that on or about March 13, 2020, the courts essentially shut down because of the coronavirus pandemic, which at that time was in its infancy. As a result, the arraignment/initial appearance could not be conducted in the Southern District until April 28, 2020, when Bass appeared before a Magistrate Judge, entered a Not Guilty plea, and was appointed counsel. [A-8, DE # 84][2] He was released on a personal recognizance bond with conditions, and returned to his home in California.

---

[2] DE refers to Docket Entries on the District Court docket.

4

The COVID-19 pandemic caused the court operations to be modified and revamped, as everyone is well aware at this point in time. During the balance of 2020 and into early 2021, jury trials were severely limited, and even those which were conducted required extensive accommodations in terms of social distancing, safety precautions, and the like. While the parties were able to obtain and review discovery material, personal contact was limited, and of course Mr. Bass was in California while his attorney was in New York. Nonetheless, court conferences were conducted by video and telephone, and the defendant was able to obtain and review the discovery material. Judge Cote had set a trial date in March of 2021, but at a conference in October, 2020, that date was extended until June 28, 2021, along with the motion and pretrial schedule.[A-11, DE # 138] In December, 2020, Bass became dissatisfied with his appointed counsel, and sought a change, which Judge Cote granted, appointing Matthew Galuzzo, Esq., to represent Bass. [A-12, DE # 160] Mr. Galuzzo notified the court that Bass intended to go to trial, and obtained funding for a laptop computer for Bass's use in reviewing discovery.

In April, 2021, Herman Bass was arrested on state charges in California, where he had been living while on bond, and upon receiving the report from PreTrial Services, Judge Cote issued a warrant for Bass's arrest and revoked his bond. [A-13, DE # 214] Bass was transferred to the Metropolitan Detention Center in April, 2021. Since the government had announced that it intended to bring Bass and another defendant to trial

on the June date the Court had set, Bass and his attorney entered into negotiations with the government, which culminated in a written plea offer on May 6, 2021. [A-29]

## THE PLEA AGREEMENT AND APPELLATE RIGHTS WAIVER

On May 26, 2021, the defendant and the Government entered into a plea agreement [A-29 - 34], pursuant to which Bass would plead guilty to Count 2 of the Indictment, in full satisfaction of all charges, and the Government agreed to dismiss the remaining charges. Count 2 charged Bass with Money Laundering Conspiracy, *18 U.S.C § 1956(h).* The plea agreement outlined the potential penalties, including the term of imprisonment of up to twenty years, a supervised release term of 3 years, as well as the fine range, and the mandatory nature of the $100 special assessment. [A-29] The agreement also advised Bass that restitution was mandatory, and the agreed upon amount was $220,439 [A-30][3]. By entering into the agreement, Bass also admitted that he was liable for the forfeiture allegations in the indictment, and agreed to forfeit $220,432 in a money judgment to be entered at sentencing. [A-29] A Consent Order of Forfeiture was executed and entered as well, and neither forfeiture nor restitution are issues on this appeal.

The agreement set out the calculation of the estimated applicable United States Sentencing Guidelines ("U.S.S.G. or Guidelines"). The parties agreed that the Base

---

[3] The amount was later changed to $176,174.84, as reflected in the Judgment[A85-91]

6

Offense Level was 8, under U.S.S.G. §2S1.1(a)(2). Applying two separate enhancements, a 10 level increase under §2B1.1 based on the fraud amount, and a 2 level increase §2S1.1(b)(2)(B) because the offense was a violation of 18 U.S.C. §1956 the adjusted Offense Level was 20. A three level adjustment for Acceptance of Responsibility reduced the final offense level to 17.[A-30]  The parties agreed that Bass's Criminal History Category was III, because he had four criminal history points. [A-30]

This calculation yields a range of imprisonment of 30 to 37 months, and a fine range of $10,000 to $500,000.  [A-31], as well as a Supervised Release term of 3 years. Bass and the Government stipulated to the estimated Guidelines Range, and agreed not to seek a departure from that range. [A-31] Both sides remained free to seek a sentence outside the Guidelines range, pursuant to 18 U.S.C.§ 3553(a).  [A-31]. Significantly, the plea agreement advised Bass that the Court was not bound by the Guidelines estimate, and that if the sentence were outside the range, he would not be entitled to withdraw his plea. [A-32] The parties agreed that either the Government or the defense would have the ability to present any relevant material to the Court in connection with sentencing.

Of significance here, the plea agreement contained a waiver of the defendant's right to appeal or otherwise challenge any component of a sentence within or below the stipulated Guidelines Range of 30 to 37 months. [A-32]  The agreement expressly

7

provided that this waiver is effective regardless of the methodology the Court used to arrive at the guideline range or the sentence. [A-32]

The appellate waiver also covered the non-incarceratory components of the sentence, including the supervised release term, the fine amount, restitution or forfeiture up to the agreed upon amount of each, and the special assessment.[A-32]

The defendant acknowledged that he was entering into the agreement because he was in fact guilty of the crimes to which he would plead [A-33], and waived his right to challenge the plea because of the government's failure to produce discovery material, Jencks Act material, or Brady material, except for proof of his actual innocence. [A-33] The agreement contained a provision related to the immigration consequences of the conviction, but that portion was not relevant or operative, since Bass is a United States citizen by birth. [PSR¶ 126]

## THE PLEA PROCEEDING AND ALLOCUTION

On May 26, 2021, the defendant and counsel appeared by videoconference before the Honorable Denise L. Cote, the United States District Judge to whom the case had been assigned, for the purpose of entering a guilty plea pursuant to the aforementioned agreement. [Plea Transcript, A-35 - 62]

Judge Cote began by describing the situation, and the restraints on the court because of the COVID-19 pandemic. She noted that the Court, the defendant, and his

8

attorney appeared by video, and she made certain that each could see everyone else. The Assistant United States Attorney appeared by telephone, and the defendant and his attorney both acknowledged that they were able to hear him. [A-36 -37] The defendant and his attorney consented to proceeding remotely and waiving Bass's personal appearance, and Judge Cote found a knowing and voluntary waiver of the defendant's right to be present before the court. [A-38] She also determined that, given the proximity of the trial date and the defendant's desire to enter a plea, it was in the interest of justice to proceed remotely, under the CARES Act. [A-38 ] At that point, Bass was sworn, and warned of the consequences of perjury. [A-39]

Judge Cote proceeded to question Bass about his education and his physical and mental health. [A-39 -40] After a series of questions, and queries to both counsel regarding their opinion, the judge found Bass competent to proceed further. [A-41] She determined that Bass had sufficient time to discuss the case with his attorney, and that he was satisfied with the services the attorney had provided. [A-41]

Judge Cote then turned her attention to the plea allocution itself. She began by explaining the rights that Bass was waiving by his plea. [A-42] She explained that he had a right to a jury trial, which was then scheduled only weeks later. She advised him that at such a trial he had the right to be represented by counsel at every stage of the proceeding, and that he was entitled to appointed counsel if he could not afford to hire

9

a lawyer. [A-42] Judge Cote advised Bass that he was presumed to be innocent, and that the government would have to produce evidence against him, that he would not have to prove anything, and the burden was solely on the government. [A-42] She discussed the fact that defense counsel could challenge the evidence, confront witnesses and cross-examine them, and issue subpoenas to compel witnesses to testify. [A-43] She made certain that he understood what she had advised, and inquired whether he understood after each of the rights was described.

The judge informed Bass that he had the right to testify if he chose to, or could choose not to do so, and that if he chose not to testify or put in a defense case, the Court would instruct the jury that no adverse inference could be drawn as a result of his failure to testify. [A-44]

Judge Cote explained that Bass would have the right to appeal an adverse verdict at trial [A-43]The Court noted that by pleading guilty, he would be giving up all the rights she had explained [A-44],  and Bass acknowledged his understanding.

Judge Cote was careful to assure herself that Bass understood what he was pleading to, explaining the conspiracy to commit money laundering contained in Count Two in some detail. [A-45] Bass acknowledged his understanding. [A-46] She went on to discuss the penalties, noting the statutory maximum of twenty years [A-46] and the maximum supervised release and fine provisions, as well as the obligatory nature of the

10

special assessment and restitution.[A-46-47] In response to a question by Bass, Judge Cote explained the concept of supervised release, as well as the consequences of violating the terms thereof. [A-47]

The Court then discussed the sentencing procedures, including the necessity of a PreSentence Report [A-48] and the fact that, even if the sentence turned out to be different than Bass expected or what was provided in the plea agreement, he would still be bound by his plea and unable to withdraw the plea. [A-49]

The Court turned to the question of the voluntariness of the plea, and the following colloquy took place:

> THE COURT:     Now, has anyone threatened you or anyone else or forced you in any way to plead guilty?
>
> THE DEFENDANT:     No, ma'am. [A-49]

Because of the pandemic restrictions, all of the participants in the plea proceeding appeared remotely. After assuring that the plea was voluntary (as noted), Judge Cote turned to the plea agreement itself. Although the defendant said that he was not permitted to have a copy during the videoconference because the MDC did not allow him to "carry" his paperwork [A-49], the judge described the document and Bass acknowledged having previously read it and reviewing it with his attorney. [A-49] He told the Court that he had authorized his attorney to sign on his behalf, and Mr. Galuzzo advised that the agreement had been signed and scanned and sent to the Court on the day of the

11

hearing, and that Bass had authorized such the previous week. [A-50]

Significantly, the Court and the defendant discussed the sentencing guideline estimate contained in the agreement, and the appellate waiver:

> "THE COURT:     Let me ask you, Mr. Bass, do you understand that, in this agreement, you and the government have calculated your sentencing guidelines range as 30 to 36 [sic] months in prison?
>
> THE DEFENDANT:     Yes. Yes, ma'am.
>
> THE COURT:     And do you understand that by signing this agreement, or authorizing your attorney to do so on your behalf, you have agreed to give up your right to appeal or challenge or litigate your sentence so long as I don't sentence you to more than 37 months in prison?
>
> THE DEFENDANT:     Yes, ma'am
>
> THE COURT:     Now, do you have any other agreement with the government about your plea or about the sentence that has been left out of this plea agreement with the government?
>
> THE DEFENDANT:     No, ma'am" [A-50-51]

The Court began to allocute Bass about the factual basis of his plea. He acknowledged that he "put something unknowingly in [my] bank account that wasn't mine, and it was wrong." [A-51] He told the Court that he expected the money to arrive because of an agreement that he had with another person, [A-52], and that he withdrew some of the money and gave it to the other person. [A-52] He said that although some

of the money remained in his bank account, he "didn't get to use it because it was still in and my bank account was closed."[A-53][4]

The defendant initially denied knowing that the funds were the proceeds of unlawful activity at the time he deposited them, and said that after he gave the money to the other person he "started figuring out that this was fraudulent...."[A-54] The Court began to explain that Bass "had to understand at the time that you had an agreement with this other person that you were actually involved in illegal activity" and that he should go to trial if he didn't know that.[A-54-55] As the defendant began to acknowledge his involvement, the video connection was apparently lost:

> "THE DEFENDANT:    Yes. I knew that when the person was sitting in the car, and he didn't come into the bank with me.
>
> THE COURT:      Okay. We have just lost – I have at least, just lost connection with the defendant.
>
> MR. GALUZZO:  I have as well, Your Honor." [A-55]

There was a pause in the proceedings while the connection to the defendant at MDC was re-established, but after that the connection to defense counsel was lost as well. After some longer pauses in the proceedings to deal with the technical issues, the following colloquy regarding the factual basis for the plea ensued:

> "THE COURT:    So, Mr. Bass, we were interrupted where I was trying to focus you on this moment in time --

---

[4] The discovery revealed that the account had been frozen by the government.

13

THE DEFENDANT:    Yes.

THE COURT:    -- before you physically hand the cashier's check to the other person. Before that moment in time, did you understand you were involved in criminal activity?

THE DEFENDANT:    Yes, I did.

THE COURT:    Before you handed that cashier's check to another person, did you understand that the use of your bank account for the receipt and transmittal of funds was a way of transferring proceeds of some kind of unlawful activity?

THE DEFENDANT:    Yes, I did.

THE COURT:    And before you handed that cashier's check to that person, did you understand that the transaction had been designed in a way to hide or disguise or conceal the source or ownership of those funds?

THE DEFENDANT:    Yes, ma'am.

* * *

THE COURT:    Before you handed that cashier's check to that person, did you understand that you were participating in a crime?

THE DEFENDANT:    Yes, I did. " [A56-57]

The government addressed the issue of venue, noting that the laundered funds, proceeds of a business email fraud, had passed through the Southern District of New York via co-conspirators, prior to transmittal to the defendant. [A-58] Both government

14

counsel and defense counsel agreed that there was a sufficient factual predicate for the plea, and defense counsel knew of no reason for the court to reject the plea. [A-58] The Court then accepted the defendant's plea:

> "THE COURT:      So Mr. Bass, since you acknowledge that you are in fact guilty as charged in Count Two, since I am satisfied that you know of your rights, including your right to go to trial, and that you are aware of the consequences of your plea, including the sentence that may be imposed, and since I find you are voluntary [sic] pleading guilty, I accept this plea on Count Two and enter a judgment on that count" [A-58]

There was a discussion of the presentence procedures, and a date for sentencing was set.

## SENTENCING SUBMISSIONS

The PreSentence Report ("PSR") was filed on August 17, 2021 (ECF # 374, Filed Under Seal). The PSR detailed Bass's involvement in the offense [PSR ¶¶ 65-67], described the entire scheme, and calculated the defendant's Sentencing Guidelines to be Offense Level 17 [PSR ¶ 109] in Criminal History Category III [PSR ¶ 115], which agreed with the estimate contained in the Plea Agreement [A-30-31] and to which the parties had stipulated.  The Advisory Guideline Range was thus calculated to be 30 to 37 months [PSR ¶ 147]

On September 9, 2021, the defense submitted a memorandum, including a

detailed mitigation report and character letters [A-16, DE # 405] which advocated for a sentence of time served, and pointed to sentencing factors under 18 U.S.C.§ 3553(a) in support of the request. The Government submitted a letter on September 20, [A-17, DE # 419] which sought a sentence within the Guidelines, as agreed to in the Plea Agreement.  The defense submitted a letter from the defendant on September21 [A-17, DE # 424].

**THE SENTENCING HEARING**

On September 23, 2021, the parties appeared before Judge Cote for sentencing. [A-63 -84]. Judge Cote made certain that the parties knew what documents and submissions she had considered in determining the sentence [A-65], including the PSR and memoranda from both sides.   Defense counsel acknowledged having reviewed the PSR with Bass, and having no objections to the report. [A-64] The Court then discussed restitution and forfeiture [A-65] and noted that there was a preliminary consent order of forfeiture.

The Court noted the stipulation regarding the guidelines calculation, as contained in the plea agreement, and that the presentence report arrived at the same calculation. [A-65]. The Court stated that she had reviewed the report and calculation, and adopted it as her own. [A-65]

16

The Court noted the relevant facts, and discussed the mitigation report the defense had submitted. [A-67] She then gave the parties a chance to be heard. The government argued for a sentence within the advisory guidelines. [A-68-69] Both defense counsel and the defendant himself were afforded an opportunity to address the Court. Counsel advocated for time served, with a condition of residential drug treatment [A-74] based on the defendant's long history of abuse, and upon the inhumane conditions known to exist at the MDC due to severe restrictions during the pandemic. [A-72 – 74] Alternatively, counsel sought home detention with conditions, rather than incarceration, based on those same factors.

After counsel spoke, Herman Bass addressed the Court. [A-76] He spoke of the hardships in his life, his drug problems, and the death of his mother. [A-77] he apologized profusely and sincerely to the Court [A-79].

Judge Cote, after hearing both sides and indicating that she had considered all arguments and submissions, announced the sentence: 30 months imprisonment, followed by three years supervised release with mandatory and special conditions, and a $100 special assessment.[A-80-82] She did not impose a fine because of the restitution and forfeiture obligations. Both counsel agreed that there was no legal reason barring imposition of that sentence [A-82], and the court ordered that it be imposed.

17

The Court then advised the defendant of his right to appeal, (in spite of the waiver) and that he had to file a Notice of Appeal within 14 days of the entry of judgment, and that he could proceed *in forma pauperis* if he could not afford the costs. [A-83]

Judgment consistent with the in court pronouncements was entered on September 23, 2021. [A-85]

On October 4, 2021, in spite of the appellate waiver in the plea agreement, defense counsel, at the defendant's request, filed a timely Notice of Appeal. [A-92]

This appeal followed.

## SUMMARY OF ARGUMENT

Because the defendant entered a counseled guilty plea pursuant to an agreement with the government, which included a waiver of his right to appeal any sentence within or below the guideline range of 30-37 months, there are no non-frivolous issues to raise on appeal where the defendant was sentenced to 30 months imprisonment.

18

# ARGUMENT

## THERE ARE NO NON-FRIVOLOUS ISSUES
## TO RAISE ON APPEAL.

## POINT ONE

## DEFENDANT'S PLEA AND WAIVER OF APPELLATE RIGHTS WERE
## KNOWING, VOLUNTARY, AND COMPETENT

In *United States v. Gomez-Perez,* 215 F.3rd 315 (2nd Circuit, 2000) this Court set forth the matters to be addressed in an *Anders*[5] brief where there is a waiver of appellate rights, as in the case at bar. Counsel must address these limited issues: 1) "whether defendant's plea and waiver of appellate rights were knowing, voluntary, and competent, (internal citations omitted) or 2) whether it would be against the defendant's interest to contest his plea, and 3) any issues implicating a defendant's constitutional or statutory rights that either cannot be waived, or cannot be considered waived by the defendant in light of the particular circumstances," *Gomez-Perez, supra* at 319.

It is clear from a thorough review of the record in this case, including the plea agreement and the transcripts of the plea and sentencing proceedings, that there are no issues to be raised in this Court. The defendant was convicted after his plea of guilty in

---

[5] *Anders v. California,* 388 U.S. 738 (1967)

19

accord with the provisions of a valid plea agreement, and the sentence imposed was at the bottom of the Guidelines range to which both sides stipulated, and within the parameters of the appellate waiver.

As detailed in the Statement of the Case, *supra,* during the plea allocution, the District Judge made a determination of Bass's competence to plead, as required. The plea allocution includes his admission to all the elements of the crime of which he was convicted. After having been advised of the rights he was entitled to assert, and which he would be waiving by pleading guilty, Bass told Judge Cote that he understood his rights and wished to waive them. He then admitted to acts which constituted the factual basis of the plea.

During the course of the allocution, the defendant affirmatively stated, under oath, that his plea was voluntary, with no coercion and no promises regarding sentence. He acknowledged that he was satisfied with the services provided by counsel, and that he had sufficient time to review the case with counsel.

The waiver of rights was given knowingly and with a full understanding of his criminal exposure, which was not only contained in the written, signed plea agreement, but was explained to him by competent counsel, and again by the District Judge. The constitutional requirements for a valid plea were met. *Boykin v. Alabama*, 395 U.S. 239 (1969). "A plea of guilty is considered voluntary and intelligent if the defendant enters the plea with full awareness of its 'direct consequences'" *Wilson v. McGinnis,* 413 F. 3rd

196 (2nd Circuit, 2005), *citing Brady v. United States*, 397 U.S. 742, 755 (1970).  A plea allocution is valid if "…it is clear from the facts and circumstances that the defendant intended to plead guilty, affirmatively admitted his guilt, stated that he was entering his plea voluntarily, and fully believed he was pleading guilty."  *United States v. Grandia*, 18 F.3d 184, 187 (2d Circuit, 1994). The record supports a finding that Mr. Bass knowingly and voluntarily pleaded guilty, and the District Judge satisfied herself that he understood what he was undertaking to do. His plea was knowing, voluntary, and competent, and the product of his informed, counseled choice.

The appellate waiver is presumptively enforceable, *United States v. Arevalo,* 628 F. 3rd 93 (2nd Circuit, 2010), *United States v. Arvanitakis*, 2020 U.S. App.LEXIS 9344 (2nd Circuit, 2020). The exceptions to that presumption are narrowly circumscribed, *see Gomez-Perez, supra.* In this case, the waiver was clearly made knowingly, voluntarily and competently, all of those factors being thoroughly explored by the Court during the plea allocution. There is nothing in the record which would lead one to conclude that the sentence was based upon an impermissible factor, such as ethnic or racial bias, which might invalidate the waiver. There was no allegation of a breach of the agreement by the Government, and in fact there was no such breach. The District Judge clearly spelled out her rationale for the imposition of the sentence, and the sentence she imposed was below the threshold of the appellate waiver.  Thus, the appellate waiver is enforceable, and there are no issues to be raised on this appeal concerning the sentence imposed.

21

Contesting the plea would not be in the defendant's interest. The defendant admitted his conduct in depositing funds into his bank account which he knew to be the proceeds of unlawful activity, and then withdrawing those funds and delivering them to another individual, while retaining a portion for himself. There is no viable defense to the charges, which are based on the defendant's admissions and the evidence obtained from bank records and other documentary material, as well as admissions by the defendant. He was sentenced at the low end of the guideline range, a reasonable sentence under the circumstances, and one which the defendant himself anticipated by entering into the plea agreement and waiving his right to appeal such a sentence.

He pled guilty to a single count in a multiple count indictment, and was sentenced within the guidelines to 30 months, but a successful contest of the plea would result in withdrawal of the plea offer, and he would then face substantially higher guidelines. He would also risk losing the 3 level reduction of the guidelines for acceptance of responsibility which the Court awarded. This plea, given Mr. Bass's admitted role in the offense and his previous criminal history, was clearly in his best interest, and his guideline sentence was similarly favorable.

Since Bass knowingly and voluntarily waived his Constitutional and trial rights, and knowingly and voluntarily entered into a plea agreement, no legal basis exists for the withdrawal of the plea. Among the rights he waived was the right to appeal any sentence which was within or below a Guidelines range of 30 to 37 months. Because

22

Judge Cote sentenced him to 30 months, at the low end of the contemplated range, the waiver of the right to appeal is effective. Thus, there are no issues for this Court to consider.

## POINT TWO

## THERE ARE NO OTHER ISSUES TO BE RAISED

The record has been thoroughly searched. The defendant's Constitutional and statutory rights were protected, both by his own counsel and by the District Court, as is clear from the record. The Court took pains to assure itself that the defendant understood his rights, and knew what he would be giving up by pleading. The defendant responded appropriately to the Court's questions during his allocution, and made it clear that he understood the proceedings.

It is apparent from a review of the facts and the law that there are no issues which can be raised on this appeal which are not frivolous. The defendant entered a plea pursuant to an agreement which contained a waiver of appellate rights, and was sentenced below the parameters of the waiver. Accordingly, counsel requests permission to withdraw from this appeal. *Anders v. California*, 388 U.S. 738 (1967).

## **<u>CONCLUSION</u>**

For the reasons stated above, the judgment of conviction and the sentence imposed

may be affirmed, and counsel's motion for permission to withdraw should be granted.

DATED :    Garden City, New York
                  April 25, 2022

Respectfully submitted,

/s/ *JOHN S. WALLENSTEIN*

JOHN S. WALLENSTEIN
Attorney for Defendant-Appellant
HERMAN BASS
1100 Franklin Avenue
Garden City, New York 11530
(516) 742-5600
JSWallensteinEsq@outlook.com

24

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32 (a) (7) (C) of the Federal Rules of Appellate Procedure, JOHN S. WALLENSTEIN, ESQ., counsel of record for Defendant-Appellant JOSHUA VANDEGRIFT hereby certifies that the foregoing brief for Defendant-Appellant is in compliance with the type-volume limitations set forth in F.R.A.P. 32 (a) (7) (B), in that it contains 5,624 words as measured by the word processing program utilized to prepare the brief.

DATED:    GARDEN CITY, NEW YORK
              April 25, 2022


*/S/ JOHN S. WALLENSTEIN*
_____
JOHN S. WALLENSTEIN, ESQ.