UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 21-2491(L), 21-3082(CON), 21-2946(CON), 22-371(CON) _____ Caption [use short title] _____

Motion for: Dismissal of the Appeal, or, in the Alternative,

for Summary Affirmance of the Conviction and Sentence

_____

Set forth below precise, complete statement of relief sought:

(a) to dismiss this appeal brought by defendant-appellant Ikechukwu Elendu

based on his knowing and voluntary waiver of his appellate rights; or, in the        United States of America v. Elendu

alternative, (b) for summary affirmance of the conviction and sentence

because there are no non-frivolous issues that can be raised on appeal

_____

_____

MOVING PARTY: United States of America          OPPOSING PARTY: Ikechukwu Elendu

[ ] Plaintiff   [✔] Defendant

[✔] Appellant/Petitioner   [ ] Appellee/Respondent

MOVING ATTORNEY: Damian Williams, U.S. Attorney, Southern District of New York          OPPOSING ATTORNEY: Jeremy Gutman

[name of attorney, with firm, address, phone number and e-mail]

By: Kevin Mead, Assistant U.S. Attorney          521 Fifth Avenue, 17th Floor

One Saint Andrew's Plaza, New York, NY 10007          New York, New York 10175

(212) 637-2211; Email: Kevin.Mead@usdoj.gov          (212) 644-5200, jgutman@jeremygutman.com

Court- Judge/ Agency appealed from: The Honorable Denise L. Cote, United States District Judge, Southern District of New York

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
[✔] Yes   [ ] No (explain):_____

_____

Opposing counsel's position on motion:
[✔] Unopposed   [ ] Opposed   [ ] Don't Know
Does opposing counsel intend to file a response:
[ ] Yes   [✔] No   [ ] Don't Know

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:

Has this request for relief been made below?   [ ] Yes [ ] No
Has this relief been previously sought in this court?   [ ] Yes [ ] No
Requested return date and explanation of emergency: _____

_____

_____

_____

Is oral argument on motion requested?   [ ] Yes [✔] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   [ ] Yes [✔] No If yes, enter date:_____

Signature of Moving Attorney:

/s/ Kevin Mead _____ Date: 11/1/2022 _____ Service by: [✔] CM/ECF   [ ] Other [Attach proof of service]

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,      :

                                     :

        Appellee,               :       **AFFIRMATION**

                                     :

      - v. -                  :     Nos.   21-2491(L),   21-

                                     :       3082(CON),   21-

                                     :   2946(CON), 22-371(CON)

                                     :

IKECHUKWU ELENDU,           :

                                     :

        Defendant-Appellant.   :

                                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK           )
COUNTY OF NEW YORK       :    ss.:
SOUTHERN DISTRICT OF NEW YORK  )

      KEVIN MEAD, pursuant to 28 U.S.C. § 1746, hereby affirms under penalty

of perjury:

      1.     I am an Assistant United States Attorney in the Office of Damian

Williams, United States Attorney for the Southern District of New York, and I

represent the Government in this appeal. I submit this affirmation in support of the

Government's motion (a) to dismiss this appeal brought by defendant-appellant

Ikechukwu Elendu based on his knowing and voluntary waiver of his appellate

rights; or, in the alternative, (b) for summary affirmance of the conviction and sentence because there are no non-frivolous issues that can be raised on appeal.

## PRELIMINARY STATEMENT

2.      Elendu appeals from a judgment of conviction entered on December 3, 2021, in the United States District Court for the Southern District of New York, by the Honorable Denise L. Cote, United States District Judge, following Elendu's guilty plea.

3.      Indictment S1 20 Cr. 179 (the "Indictment") was filed on August 13, 2020, charging Elendu in two counts. Count One charged Elendu with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Count Two charged Elendu with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. The indictment also charged two other individuals with the same crimes.

4.      On August 6, 2021, Elendu appeared by video before Judge Cote and, pursuant to a plea agreement with the Government (the "Plea Agreement"), pled guilty to Count Two of the Indictment, the conspiracy to commit bank fraud charge. In the Plea Agreement, Elendu agreed, *inter alia*, that he would not appeal a term of imprisonment less than or equal to 41 months, a term of supervised release less than or equal to the statutory maximum, a fine less than or equal to $1,000,000, a restitution or forfeiture order less than or equal to $3,154,266, or a special assessment less than or equal to $100.

5.     On December 3, 2021, Judge Cote sentenced Elendu to a Guidelines term of imprisonment of 41 months, to be followed by three years of supervised release.   Judge Cote also imposed $3,154,266 in forfeiture and a $100 special assessment.   Judge Cote did not impose a fine.   The judgment was entered on December 3, 2021.   On February 1, 2022, Judge Cote also imposed $539,930 in restitution.

6.     On December 16, 2021, Elendu filed a notice of appeal. On March 24, 2022, his appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating, after reviewing the record, that counsel had concluded that there are no meritorious or non-frivolous issues to be raised on appeal.

7.     Elendu is serving his sentence.

## STATEMENT OF FACTS

**A.     The Offense Conduct**

8.     Elendu was a member of a conspiracy that stole through fraud, and then laundered, millions of dollars.   Members of the conspiracy opened business bank accounts in names similar to the names of real companies. The conspirators then used those bank accounts to receive proceeds of fraudulent schemes; specifically, business e-mail compromise schemes that involved fraudulently inducing companies and individuals to wire money into the conspirators' bank accounts and romance scams.   Members of the conspiracy then accessed their ill-gotten funds by

withdrawing cash straight from the accounts that received the money, or by transferring the fraud proceeds to other bank accounts and then withdrawing cash from those accounts. (*See* PSR ¶¶ 21-44).[1]

9. Elendu's role in the conspiracy involved opening bank accounts in names similar to the names of legitimate entities with which he had no affiliation, receiving proceeds from the business email compromise schemes, and transferring those fraudulent proceeds to others involved in the offense. (PSR ¶¶ 40-41.) Elendu also used a business account and his personal accounts as intermediaries to receive funds that had initially been transferred to accounts in the names of businesses, and he then transferred those funds to coconspirators abroad. (PSR ¶ 42.)

**B.    The Plea Agreement and the Guilty Plea**

10. On August 6, 2021, Elendu appeared by video with counsel before Judge Cote and pled guilty to Count Two of the Indictment. (A. 24-48). He entered the plea pursuant to the Plea Agreement. (A. 49-54).[2]

---

[1] "PSR" and "Presentence Report" refer to the Presentence Investigation Report prepared by the United States Probation Office (the "Probation Office") in connection with Elendu's sentencing; "Br." refers to the *Anders* brief filed by Elendu's appellate counsel; and "A." refers to the appendix filed with that brief. Unless otherwise noted, citations omit internal quotation marks, citations, footnotes, and previous alterations.

[2] Although only the last page of the Plea Agreement is marked with a page number in the appendix, the Plea Agreement appears at the pages that, if marked, would be pages 49 through 54 of the appendix.

11.     The Plea Agreement contained a stipulation between the parties as to the application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") to Elendu's offense. The parties calculated Elendu's offense level as follows: (i) under U.S.S.G. § 2B1.1(a)(1), the base offense level was seven because the statutory maximum term of imprisonment for the offense was 30 years; (ii) under U.S.S.G. § 2B1.1(b)(1)(I), a 16-level increase to the offense level applied because Elendu intended to inflict a loss of $3,154,266, which is more than $1,500,000 but not more than $3,500,000; and (iii) under U.S.S.G. § 3E1.1, a three-level decrease applied based on Elendu's acceptance of responsibility, yielding a total offense level of 20. (A. 50). The parties further stipulated that Elendu had zero criminal history points, placing him in Criminal History Category I. (A. 50).

12.     Based on an offense level of 20 and Criminal History Category I, the parties stipulated that the applicable Guidelines range was 33 to 41 months' imprisonment (the "Stipulated Guidelines Range"). (A. 50). The parties agreed that neither a downward nor an upward departure from the Stipulated Guidelines Range was warranted, and that neither party would seek any departure or adjustment under the Guidelines that was not set forth in the Plea Agreement. (A. 51). The parties further stipulated that any sentence to be imposed upon Elendu would be determined solely by the District Court, which could impose any sentence up to and including the statutory maximum. (A. 51).

13.    In the Plea Agreement, Elendu agreed that he would "not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 33 to 41 months' imprisonment." (A. 52). Elendu also "agree[d] not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum," and he likewise "agree[d] not to appeal of bring a collateral challenge of any fine that is less than or equal to $1,000,000" or "any special assessment that is less than or equal to $100." (A. 52).

14.    Elendu also agreed under the Plea Agreement to admit the forfeiture allegations against him, to forfeit $3,154,266, and to make restitution in the amount of $ 3,154,266. (A. 49-50).  Elendu further agreed "not to appeal or bring a collateral challenge of any restitution or forfeiture amount that is less than or equal to $3,154,266."  (A. 52).

15.    Before accepting Elendu's guilty plea, Judge Cote conducted a careful allocution that complied with Rule 11 of the Federal Rules of Criminal Procedure. (A. 24-48).

16.    At the outset, Judge Cote established that Elendu could see the Court and his counsel; that Elendu wanted to proceed by videoconference; that Elendu had discussed proceeding by videoconference with his attorney; and that Elendu's

counsel had submitted a letter expressing his desire to proceed by video conference. (A. 25-27). Judge Cote stated that she was conducting the proceeding by videoconference pursuant to the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, and she found that it was very much in the interest of justice, as well as Elendu's interest and society's broader interest, that the plea proceeding go forward by videoconference. (A. 27-28). Judge Cote confirmed that defense counsel had consulted with Elendu about Elendu's waiver of his right to plead guilty in person, further confirmed with Elendu that he wished to enter his plea remotely, and found that he had knowingly and voluntarily waived his right to appear in person. (A. 26-27).

17.     After placing Elendu under oath, Judge Cote established that Elendu was competent to plead guilty. (A. 29-31). Judge Cote also confirmed that Elendu had had sufficient opportunity to discuss his case with his attorney and was satisfied with his attorney's representation. (A. 31).

18.     Judge Cote next established that Elendu understood the rights he was giving up by pleading guilty, including his rights: (a) to persist in his previously entered plea of not guilty; (b) to a jury trial where he would be presumed innocent and the Government would bear the burden of proving his guilt beyond a reasonable doubt; (c) to the assistance of counsel, including court-appointed counsel if necessary, at trial and at every other stage of the proceedings; (d) to confront and

7

cross-examine witnesses; (e) to testify, present evidence, and compel the attendance of witnesses; and (f) against compelled self-incrimination. (A. 31-34). Elendu stated that he understood these rights and was willing to waive them by pleading guilty. (A. 31-34). Elendu also stated that he is a United States citizen. (A. 36).

19.　　Judge Cote reviewed the charge against Elendu, confirmed that Elendu understood the crime to which he was pleading guilty, and advised Elendu of the maximum penalties he would face as a result of his guilty plea. (A. 34-36).

20.　　Judge Cote explained that the District Court was not bound by the Plea Agreement or its Stipulated Guidelines Range, and that the sentence would be solely in her discretion. (A. 36-38). Judge Cote confirmed that Elendu had reviewed the Plea Agreement with his attorney. (A. 38-39). Judge Cote then reviewed portions of the Plea Agreement and confirmed that Elendu understood them. (A. 39). Elendu acknowledged that in the Plea Agreement he agreed to the appropriate Guidelines calculation. (A. 39). Judge Cote specifically confirmed that Elendu understood he was waiving his right to appeal or collaterally challenge a sentence within or below the Stipulated Guidelines Range, confirming that Elendu understood he had agreed, "that you will not appeal, challenge, or litigate your sentence so long as I don't sentence you to more than 41 months in prison." (A. 39). Elendu confirmed that he understood. (A. 39).

21.    Judge Cote confirmed that Elendu's plea was voluntary, i.e., that his guilty plea was not the result of threats or force. (A. 38). Judge Cote further confirmed that Elendu had no additional agreements with the Government about his plea or sentence outside the Plea Agreement. (A. 39).

22.    Judge Cote also confirmed that Elendu understood that the plea included the possibility he might need to pay restitution and make forfeiture. (A. 36).

23.    Judge Cote ensured that a factual basis supported the plea. She asked Elendu to "tell me in your own words what you did that makes you believe that you're guilty of the crime charged in Count Two." (A. 39). Through a series of questions and answers with Judge Cote, Elendu admitted that "between March 2018 and January 2020," he "agreed with others to open bank accounts in the name of businesses I did not know or have any association with." (A. 40). Elendu provided two examples of bank accounts he fraudulently opened, said that "third parties wired funds" to those accounts, that he "ordered the transfer of these funds to other bank accounts," and that he took a fee for his role. (A. 40-43). Elendu admitted that he knew he "was participating in something wrong and unlawful." (A. 42). He further said that he made false statements to the banks when he opened those accounts. (A. 43-45).

24.    The Government proffered that its evidence against Elendu included proof that bank victims of the defendant's conspiracy were insured by the Federal

Deposit Insurance Corporation, that one of the victims of the scheme was located in the Southern District of New York, and that wire transfers sent from fraudulent accounts passed through banks within the Southern District of New York. (A. 45).

25.     Judge Cote accepted the plea, finding that Elendu understood his rights and the consequences of the plea, that the plea was made voluntarily, and that there was a factual basis for it. (A. 46-47).

**C.     The Sentencing**

26.     In advance of Elendu's sentencing, the Probation Office prepared and circulated the Presentence Report. Consistent with the Stipulated Guidelines Range in the Plea Agreement, the Presentence Report calculated an offense level of 20, a Criminal History Category of I, and an applicable Guidelines range of 33 to 41 months' imprisonment. (PSR ¶ 105).

27.     On December 3, 2021, Elendu appeared by video with counsel before Judge Cote for sentencing. (A. 55-79). The sentencing proceeding complied with Rule 32 of the Federal Rules of Criminal Procedure.

28.     At the outset, Judge Cote established that Elendu could see and hear the Court and his attorneys; that Elendu had discussed proceeding by videoconference with his counsel; and that that Elendu wanted to proceed by videoconference. (A. 56-58). Judge Cote conducted the proceeding by videoconference pursuant to the

CARES Act, and she found that delaying the sentence further would seriously harm the interest of justice. (A. 58-59).

29.     Judge Cote made it clear that she had received and reviewed the Presentence Report, Elendu's sentencing submission, which included letters from family and friends, and the Government's sentencing submission. (A. 59-60, 62). Judge Cote confirmed that Elendu and his counsel had reviewed and discussed the Presentence Report, and that Elendu had no objections to it. (A. 59-60).

30.     Judge Cote gave both parties the opportunity to make arguments regarding the appropriate sentence. (A. 62-73). Defense counsel requested a sentence of probation, arguing that his family circumstances and lower culpability compared to codefendants warranted leniency. (A. 62-72). Judge Cote also gave Elendu an opportunity to address the District Court, and he did so. (A. 73-74).

31.     Judge Cote analyzed the Guidelines. Consistent with the Stipulated Guidelines Range in the Plea Agreement and the calculation in the Presentence Report, she concluded that the applicable Guidelines range was 33 to 41 months' imprisonment. (A. 60).

32.     Judge Cote imposed a sentence of 41 months' imprisonment followed by a three-year term of supervised release. (A 76). She described her reasons at length and included in that description sentencing factors under 18 U.S.C. § 3553(a). (A. 74-77).

33.     While taking note of Elendu's family circumstances, Judge Cote also noted that Elendu's conduct was "prolonged, significant, intentional, and serious," and that it continued even after he was warned by the FBI. (A. 74). Judge Cote further noted, inter alia, that other defendants who had received similar sentences were "the most comparable in terms of sentences." (A. 76).

34.     Judge Cote sentenced Elendu to 41 months' imprisonment, to be followed by three years of supervised release, and imposed the previously ordered forfeiture and a $100 special assessment. (A. 60-61, 76-77). Judge Cote did not impose a fine. (A. 77).

35.     Judge Cote then advised Elendu of his right to appeal. (A. 77-78).

36.     On February 1, 2022, Judge Cote approved and filed a consent order of restitution in the amount of $539,930. (A. 87-92).

## A R G U M E N T

## POINT I

## Elendu's Appeal Should Be Dismissed Because He Knowingly and Voluntarily Waived His Right to Appeal

37.     In his Plea Agreement, Elendu expressly waived his right to appeal a sentence within or below the Stipulated Guidelines Range of 33 to 41 months' imprisonment, a term of supervised release less than or equal to the statutory maximum, restitution and forfeiture amounts less than or equal to $3,154,266, a fine less than or equal to $1,000,000, and a special assessment less than or equal to $100.

(A. 52). During his plea proceeding, Elendu affirmed that he had reviewed the Plea Agreement and discussed it with his attorney, that he understood the Plea Agreement, and that he understood he was waiving his right to appeal a sentence within or below the Stipulated Guidelines Range, which Judge Cote advised him meant any sentence of 41 months' imprisonment or less. (A. 38-39). Because Elendu's waiver was competent, knowing, and voluntary, and because Judge Cote in fact sentenced Elendu to a term of imprisonment of 41 months, three years of supervised release, no fine, forfeiture in the amount of $3,154,266, restitution in the amount of $539,930, and a special assessment of $100, Elendu has waived any challenge to his sentence. Accordingly, his appeal should be dismissed pursuant to the waiver.

38.     This Court has repeatedly held that waivers of the right to appeal are typically valid and enforceable. *See United States v. Borden*, 16 F.4th 351, 354 (2d Cir. 2021); *United States v. Coston*, 737 F.3d 235, 237 (2d Cir. 2013) (per curiam); *United States v. Riggi,* 649 F.3d 143, 147-48 (2d Cir. 2011); *United States v. Lee*, 523 F.3d 104, 106 (2d Cir. 2008); *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000); *United States v. Difeaux*, 163 F.3d 725, 728 (2d Cir. 1998); *United States v. Djelevic*, 161 F.3d 104, 106-07 (2d Cir. 1998); *United States v. Maher*, 108 F.3d 1513, 1531 (2d Cir. 1997).

39.     The circumstances under which this Court will decline to enforce a waiver are extremely limited. *See Gomez-Perez*, 215 F.3d at 319 ("The[] exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of our jurisprudence. Accordingly, we have upheld waiver provisions even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement."). As this Court noted in *Gomez-Perez*, the exceptions include situations

> when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence . . . .

*Id*.

40.     Here, Elendu's appellate counsel rightly concedes that Elendu's plea and appellate waiver were knowing, voluntary, and competent. (Br. 10-11). As described above, the record supports that concession. (*See supra* ¶¶ 10-25). In particular, Judge Cote ensured that Elendu was aware of the appeal waiver in the Plea Agreement and had Elendu confirm under oath that he understood he was waiving his right to appeal a prison sentence of 41 months or less. (A. 38-39).

14

41. This case does not fit within any of the exceptions to the enforcement of appeal waivers. The Government did not breach the Plea Agreement, nor did Judge Cote base Elendu's sentence—which was within the stipulated Guidelines range—on any impermissible factors. Judge Cote also provided a rationale for the chosen sentence. (A. 74-77).

42. To consider issues beyond the enforceability of the appellate waiver would undermine the plea bargaining process, the benefits of which this Court has long recognized:

> In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

*United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam). Accordingly, Elendu's appeal from his sentence should be dismissed.

## POINT II

**Elendu's Conviction and Sentence Should Be Summarily Affirmed Because There Are No Non-Frivolous Issues to Be Raised on Appeal**

43. Even if Elendu's appeal were not barred by a valid and enforceable appellate waiver, there would be no non-frivolous arguments to be raised on appeal, and summary affirmance would be warranted. Elendu's appellate counsel states, in a submission pursuant to *Anders*, that this appeal "does not present any meritorious

issues for appellate review," (Br. 8), and "there are no grounds for challenging the reasonableness of the sentence imposed here in any event," (Br. 12). The Government agrees.

## A.    Elendu Pleaded Guilty Knowingly, Voluntarily, and Competently

44.    There are no meritorious or non-frivolous issues Elendu could raise in connection with his guilty plea. Elendu's plea proceeding before Judge Cote complied with Rule 11 of the Federal Rules of Criminal Procedure. Judge Cote made the findings necessary under the CARES Act to proceed remotely; ensured that Elendu was competent to enter a guilty plea; informed Elendu of the nature of the charge that was pending against him and of the maximum penalties he faced upon conviction; ensured that Elendu was aware of the rights he was giving up by pleading guilty; confirmed that Elendu understood the court's obligation to calculate the Guidelines and consider the Section 3553(a) factors; confirmed that Elendu is a United States citizen; confirmed that Elendu understood the appellate waiver; determined that a factual basis supported Elendu's guilty plea; and confirmed that Elendu was pleading guilty of his own volition.  (A. 24-48). On this record, Elendu cannot validly claim that his plea was not knowing, voluntary, and competent.

## B.    Elendu's Sentence Was Procedurally and Substantively Reasonable

45.    There are no meritorious or non-frivolous issues that Elendu could raise in connection with sentencing. Appellate review of a district court's sentence

"encompasses two components: procedural review and substantive review." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). A district court commits procedural error at sentencing when it fails to calculate the Guidelines range (unless omission of the calculation is justified), makes a mistake in its Guidelines calculation, treats the Guidelines as mandatory, does not consider the factors in 18 U.S.C. § 3553(a), rests its sentence on a clearly erroneous finding of fact, or "fails adequately to explain its chosen sentence." *Id.* at 190; *see Gall v. United States*, 552 U.S. 38, 51 (2007). If the Court determines that there was no procedural error, it "should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51. The Court must "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion and bearing in mind the institutional advantages of district courts." *Cavera*, 550 F.3d at 190. The substantive unreasonableness standard "provide[s] a backstop for those few cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

46.     Elendu's sentence was procedurally reasonable. Judge Cote made the findings necessary under the CARES Act to proceed remotely. (A. 56-59). Judge

Cote then confirmed that Elendu and his counsel had read and discussed the Presentence Report, and that Elendu had no objections. (A. 59-60). Judge Cote correctly calculated the Guidelines, consistent with the parties' Plea Agreement and with the Presentence Report. (A. 60). The record also makes clear that Judge Cote understood she was not bound by the Guidelines and considered the Section 3553(a) factors. (A. 37, 74-77). Judge Cote gave defense counsel and Elendu an opportunity to speak. (A. 62-74). And Judge Cote gave a detailed statement of her reasons for the sentence imposed. (A. 74-77).

47.     The within-Guidelines sentence of 41 months' imprisonment and three years' supervised release was also substantively reasonable.

48.     Judge Cote noted that Elendu's conduct was "prolonged, significant, intentional, and serious," and that it continued even after he was warned by the FBI. (A. 74). Judge Cote further noted that other defendants who had received similar sentences were "the most comparable in terms of sentences." (A. 76). And Judge Cote took account of Elendu's family circumstances but found they did not suggest that the sentence of incarceration she intended to give should not be imposed. (A. 74). In these circumstances, the sentence Judge Cote imposed was not substantively unreasonable. *See United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (explaining that "in the overwhelming majority of cases, a Guidelines sentence will

fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances").

## C.    Elendu Received Effective Assistance of Counsel

49.    Finally, Elendu cannot make a non-frivolous claim of ineffective assistance of counsel on direct appeal. As the record shows, defense counsel effectively negotiated a Plea Agreement and effectively represented Elendu's interests at every stage of the proceedings. Defense counsel's performance cannot be said to have fallen below "an objective standard of reasonableness" under "prevailing professional norms," and Elendu cannot demonstrate prejudice from the representation he received. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984).

50.    Elendu stated at the time of his plea that he was satisfied with his attorney's representation. (A. 31). That satisfaction was well earned. For example, without the benefit of the Plea Agreement, Elendu faced additional criminal exposure for the offense charged in Count One of the Indictment.

51.    Defense counsel also advocated vigorously on Elendu's behalf throughout the case, which included advocacy at sentencing, during which counsel demonstrated familiarity with Elendu's family circumstances and other details that arguably weighed in favor of leniency, and argued forcefully for a below-Guidelines sentence. (A. 62-72).

52. Furthermore, Elendu cannot establish prejudice. Not only did Elendu receive substantial benefits as part of his plea—namely, the dismissal of Count One and a reduction in his Guidelines offense level for accepting responsibility—but there is no suggestion in the record that, but for any purported ineffectiveness, he would have proceeded to trial. *See Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) ("To satisfy the second prong of *Strickland* in the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial.").

53. In these circumstances, there is no non-frivolous claim that Elendu's counsel rendered ineffective assistance. Moreover, to the extent a claim could be raised, it should be done through a motion under 28 U.S.C. § 2255, not direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance.").

## CONCLUSION

54.     Elendu's waiver of his right to appeal should be given effect, and his appeal should be dismissed. In the alternative, Elendu's conviction and sentence should be summarily affirmed because there are no meritorious and non-frivolous issues on appeal.

Dated:      New York, New York
            November 1, 2022

                                      /s/ Kevin Mead                    
                                      Kevin Mead
                                      Assistant United States Attorney
                                      Telephone: (212) 637-2211

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this motion complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this motion, there are 4,453 words in this motion.

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York


By: KEVIN MEAD
Assistant United States Attorney
(212) 637-2211