### UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

**Docket Number(s):** 21-2491(L), 21-3082(CON), 21-2946(CON), 22-371(CON)          _____ Caption [use short title] _____

**Motion for:** Dismissal of the Appeal, or, in the Alternative,

for Summary Affirmance of the Conviction and Sentence

_____

_____

Set forth below precise, complete statement of relief sought:

(a) to dismiss this appeal brought by defendant-appellant Herman Bass

based on his knowing and voluntary waiver of his appellate rights; or, in the

alternative, (b) for summary affirmance of the conviction and sentence

because there are no non-frivolous issues that can be raised on appeal

_____

_____

_____

**United States of America v. Bass**

**MOVING PARTY:** United States of America          **OPPOSING PARTY:** Herman Bass

    ☐ Plaintiff          ☐ Defendant

    ☐ Appellant/Petitioner          ☑ Appellee/Respondent

**MOVING ATTORNEY:** Damian Williams, U.S. Attorney, Southern District of New York          **OPPOSING ATTORNEY:** John S. Wallenstein

[name of attorney, with firm, address, phone number and e-mail]

By: Kevin Mead, Assistant U.S. Attorney          1100 Franklin Avenue, Suite 305

One Saint Andrew's Plaza, New York, NY 10007          Garden City, New York 11530

(212) 637-2211; Email: Kevin.Mead@usdoj.gov          516-742-5600, JSWallensteinEsq@outlook.com

Court- Judge/ Agency appealed from: The Honorable Denise L. Cote, United States District Judge, Southern District of New York

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain):_____
_____

Opposing counsel's position on motion:
☑ Unopposed  ☐ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes  ☑ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☐ No
Requested return date and explanation of emergency: _____
_____
_____
_____

Is oral argument on motion requested?  ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes  ☑ No  If yes, enter date:_____

**Signature of Moving Attorney:**

/s/ Kevin Mead _____ **Date:** 11/1/2022 _____ Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

Appellee,

- v. -

HERMAN BASS,

Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**AFFIRMATION**

Nos. 21-2491(L), 21-2946(CON), 21-3082(CON), 22-371(CON)

STATE OF NEW YORK              )
COUNTY OF NEW YORK        :        ss.:
SOUTHERN DISTRICT OF NEW YORK   )

KEVIN MEAD, pursuant to 28 U.S.C. § 1746, hereby affirms under penalty of perjury:

1.    I am an Assistant United States Attorney in the Office of Damian Williams, United States Attorney for the Southern District of New York, and I represent the Government in this appeal. I submit this affirmation in support of the Government's motion (a) to dismiss this appeal brought by defendant-appellant Herman Bass based on his knowing and voluntary waiver of his appellate rights; or,

in the alternative, (b) for summary affirmance of the conviction and sentence because there are no non-frivolous issues that can be raised on appeal.

## PRELIMINARY STATEMENT

2.      Bass appeals from a judgment of conviction entered on September 24, 2021, in the United States District Court for the Southern District of New York, by the Honorable Denise L. Cote, United States District Judge, following Bass's guilty plea.

3.      Indictment 20 Cr. 179 (the "Indictment") was filed on March 4, 2020, charging Bass in two counts. Count One charged Bass with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349.  Count Two charged Bass with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The Indictment charged nine other individuals and contained three additional counts that did not charge Bass.

4.      On May 26, 2021, Bass appeared by video before Judge Cote and, pursuant to a plea agreement with the Government (the "Plea Agreement"), pled guilty to Count Two of the Indictment, the conspiracy to commit money laundering charge. In the Plea Agreement, Bass agreed, *inter alia*, that he would not appeal a term of imprisonment less than or equal to 37 months, a term of supervised release less than or equal to the statutory maximum, a fine less than or equal to $500,000, a

restitution or forfeiture order less than or equal to $220,432, or a special assessment less than or equal to $100.

5.    On September 23, 2021, Judge Cote sentenced Bass to a term of imprisonment of 30 months, to be followed by three years of supervised release. Judge Cote also imposed $220,432 in forfeiture, $176,174.84 in restitution, and a $100 special assessment.  Judge Cote did not impose a fine.  The judgment was entered on September 24, 2021.

6.    On October 4, 2021, Bass filed a notice of appeal. On April 28, 2022, his appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that after a thorough review of the record, counsel had concluded that there are no non-frivolous issues to be raised on appeal.

7.    Bass is serving his sentence.

## STATEMENT OF FACTS

**A.    The Offense Conduct**

8.    Bass was a member of a conspiracy that laundered millions of dollars of stolen money. Members of the conspiracy opened business bank accounts in names similar to the names of real companies. The conspirators then used those bank accounts to receive proceeds of fraudulent schemes; specifically, business e-mail compromise schemes that involved fraudulently inducing companies and individuals to wire money into the conspirators' bank accounts and romance scams.  Members

of the conspiracy then accessed their ill-gotten funds by withdrawing cash straight from the accounts that received the money, or by transferring the fraud proceeds to other bank accounts, then withdrawing cash from those accounts.  (*See* PSR ¶¶ 25-89).[1]

9.     Bass's role in the conspiracy involved opening bank accounts in names similar to the names of legitimate entities with which Bass had no affiliation, receiving proceeds from a business email compromise scheme, and transferring those fraudulent proceeds to others involved in the offense.  (PSR ¶¶ 61, 65-67.)

**B.     The Plea Agreement and the Guilty Plea**

10.     On May 25, 2021, Bass appeared by video with counsel before Judge Cote and pled guilty to Count Two of the Indictment. He entered the plea pursuant to the Plea Agreement. (A. 29-34).

11.     The Plea Agreement contained a stipulation between the parties as to the application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") to Bass's offense. The parties calculated Bass's offense level as follows: (i) under U.S.S.G. § 2S1.1(a)(2), the base offense level was 18 because it

---

[1] "PSR" and "Presentence Report" refer to the Presentence Investigation Report prepared by the United States Probation Office (the "Probation Office") in connection with Bass's sentencing; "Br." refers to the *Anders* brief filed by Bass's appellate counsel; and "A." refers to the appendix filed with that brief. Unless otherwise noted, citations omit internal quotation marks, case citations, footnotes, and previous alterations.

was eight plus the value of the laundered funds, which were approximately $220,432; (ii) under U.S.S.G. § 2S1.1(b)(2)(B), a two-level increase to the offense level applied because Bass was convicted under 18 U.S.C. § 1956; and (iii) under U.S.S.G. § 3E1.1, a three-level decrease applied based on Bass's acceptance of responsibility, yielding a total offense level of 17. (A. 30). The parties further stipulated that Bass had four criminal history points, placing him in Criminal History Category III. (A. 30-31).

12.     Based on an offense level of 17 and Criminal History Category III, the parties stipulated that the applicable Guidelines range was 30 to 37 months' imprisonment (the "Stipulated Guidelines Range"). (A. 31). The parties agreed that neither a downward nor an upward departure from the Stipulated Guidelines Range was warranted, and that neither party would seek any departure or adjustment under the Guidelines that was not set forth in the Plea Agreement. (A. 31). The parties further stipulated that any sentence to be imposed upon Bass would be determined solely by the District Court, which could impose any sentence up to and including the statutory maximum. (A. 32).

13.     In the Plea Agreement, Bass agreed that he would "not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 30 to 37 months'

5

imprisonment." (A. 32). Bass also "agree[d] not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum," and he likewise "agree[d] not to appeal any fine that is less than or equal to $500,000." (A. 32).

14.    Bass also agreed under the Plea Agreement to admit the forfeiture allegation against him, to forfeit $220,432, and to make restitution in the amount of $220,432 (A. 29-30). Bass further agreed "not to appeal or bring a collateral challenge of any restitution or forfeiture amount that is less than or equal to $220,432," or any special assessment less than or equal to $100.  (A. 32).

15.    Before accepting Bass's guilty plea, Judge Cote conducted a careful allocution that complied with Rule 11 of the Federal Rules of Criminal Procedure. (A. 35-62).

16.    At the outset, Judge Cote established that Bass could see Judge Cote and his attorney; that his attorney could see him and Judge Cote; that Bass wanted to proceed by videoconference; that Bass had discussed proceeding by videoconference with his attorney; and that Bass wished to proceed by videoconference. (A. 36-37). Judge Cote found that Bass had knowingly and voluntarily waived his right to appear in person in court, and found, under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, that it was

strongly in the interests of justice to proceed with the plea proceeding through a videoconference. (A. 38).

17.     After placing Bass under oath, Judge Cote established that Bass was competent to plead guilty. (A. 39-41). Judge Cote also confirmed that Bass had had sufficient opportunity to discuss his case with his attorney and was satisfied with his attorney's representation. (A. 41).

18.     Judge Cote next established that Bass understood the rights he was giving up by pleading guilty, including his rights: (a) to persist in his previously entered plea of not guilty; (b) to a jury trial where he would be presumed innocent and the Government would bear the burden of proving his guilt beyond a reasonable doubt; (c) to the assistance of counsel, including court-appointed counsel if necessary, at trial and at every other stage of the proceedings; (d) to confront and cross-examine witnesses; (e) to testify, present evidence, and compel the attendance of witnesses; and (f) against compelled self-incrimination. (A. 42-44). Bass stated that he understood these rights and was willing to waive them by pleading guilty. (A. 42-44). Bass also confirmed that he is a United States citizen. (A. 48).

19.     Judge Cote reviewed the charge against Bass, confirmed that Bass understood the crime to which he was pleading guilty, and advised Bass of the maximum penalties he would face as a result of his guilty plea. (A. 44-48).

20.     Judge Cote explained that the District Court was not bound by the Plea Agreement or its Stipulated Guidelines Range, and that the sentence would be solely in her discretion. (A. 48-49). Judge Cote confirmed that Bass had reviewed the Plea Agreement with his attorney. (A. 49-50). Judge Cote then reviewed portions of the Plea Agreement and confirmed that Bass understood them. (A. 50-51). Bass acknowledged that the Plea Agreement contained stipulations about the appropriate Guidelines calculation. (A. 50-51). Judge Cote specifically confirmed that Bass understood he was waiving his right to appeal or collaterally challenge a sentence within or below the Stipulated Guidelines Range, confirming that Bass understood he had agreed, "to give up your right to appeal or challenge or litigate your sentence so long as I don't sentence you to more than 37 months in prison." (A. 51). Bass confirmed that he understood. (A. 51).

21.     Judge Cote confirmed that Bass was pleading guilty voluntarily and of his own free will, and that his guilty plea was not the result of threats or force. (A. 49). Judge Cote further confirmed that Bass had no additional agreements with the Government about his plea or sentence outside the Plea Agreement.  (A. 51).

22.     Judge Cote also confirmed that Bass understood that the plea included the possibility he might need to pay restitution and the requirement that he pay forfeiture in the amount of $220,432. (A. 46-47, 61-62).

23.     Judge Cote ensured that a factual basis supported the plea. She asked Bass to "tell me in your own words what you did that makes you believe that you are guilty of the crime charged in Count Two." (A. 51). Through a series of questions and answers with Judge Cote, Bass admitted that, pursuant to an agreement with another, he received money into his bank account and "withdr[e]w the money out into a cashier's check and gave it [to a coconspirator]." (A. 52). He further admitted that before he used his bank account to transfer those funds, he understood he was "transferring the proceeds of some kind of unlawful activity," and that the transaction "had been designed in a way to hide or disguise or conceal the source or ownership of those funds." (A. 57).

24.     The Government proffered that it would be able to prove that the funds in question derived from a wire fraud; and that the proceeds Bass laundered had, via the acts of coconspirators, passed through the Southern District of New York. (A. 58).

25.     Judge Cote accepted the plea, finding that Bass knew his rights, was aware of the consequences of the plea, that the plea was made voluntarily, and that there was a factual basis for it. (A. 58).

## C.     The Sentencing

26.     In advance of Bass's sentencing, the Probation Office prepared and circulated the Presentence Report. Consistent with the Stipulated Guidelines Range

in the Plea Agreement, the Presentence Report calculated an offense level of 17, a Criminal History Category of III, and an applicable Guidelines range of 30 to 37 months' imprisonment. (PSR ¶ 147).

27.  On September 23, 2021, Bass appeared in person with counsel before Judge Cote for sentencing. (A. 63-84). The sentencing proceeding complied with Rule 32 of the Federal Rules of Criminal Procedure.

28.  Judge Cote acknowledged that she had received and reviewed the Presentence Report, Bass's sentencing submission, which included letters from family and friends, and the Government's sentencing submission. (A. 65). Judge Cote confirmed that Bass and his counsel had reviewed and discussed the Presentence Report, and that Bass had no objections. (A. 64).

29.  Judge Cote gave both parties the opportunity to make arguments regarding the appropriate sentence. (A. 67-75). Defense counsel requested a sentence of time served, arguing that his very difficult upbringing, medical issues, and harsh conditions of confinement warranted leniency. (A. 69-75). Judge Cote also gave Bass an opportunity to address the court, and he did so. (A. 76-80).

30.  Judge Cote analyzed the Guidelines. Consistent with the Stipulated Guidelines Range in the Plea Agreement and the calculation in the Presentence Report, she concluded that the applicable Guidelines range was 30 to 37 months' imprisonment. (A. 65).

10

31.     Judge Cote imposed a sentence of 30 months' imprisonment followed by a three-year term of supervised release, (A. 81), consistent with the recommendation of the Probation Office, (A. 65; PSR at 35). She described her reasons and explicitly took into account the nature and circumstances of the offense and the history and characteristics of the defendant. (A. 80-82).

32.     Judge Cote noted that Bass knew his conduct was wrong at the time, and that he "made tens of thousands of dollars from it." (A. 81). His conduct, she said, "was a significant wrong" and "wasn't just a mistake in judgment. It was a criminal act." (A. 81). On the other side of the ledger, Judge Cote noted Bass's family circumstances, particularly the loss of his mother, and the need to "balance [his] very extensive health needs." (A. 80-81). Judge Cote also took into account Bass's conditions of confinement, noting both that "no one deserves those conditions" and that Bass would have remained on bail pending sentence but for his own actions. (A. 81).

33.     In addition to 30 months' imprisonment and three years of supervised release, Judge Cote imposed the previously ordered forfeiture as well as restitution and a $100 special assessment. (A. 65, 81-82).

34.     Judge Cote then advised Bass of his right to appeal. (A. 83).

# A R G U M E N T

## POINT I

### Bass's Appeal Should Be Dismissed Because He Knowingly and Voluntarily Waived His Right to Appeal

35.     In his Plea Agreement, Bass expressly waived his right to appeal a sentence within or below the Stipulated Guidelines Range of 30 to 37 months' imprisonment, a term of supervised release less than or equal to the statutory maximum, restitution and forfeiture amounts less than or equal to $220,432, a fine less than or equal to $500,000, and a special assessment less than or equal to $100. (A. 32). During his plea proceeding, Bass affirmed that he had reviewed the Plea Agreement and discussed it with his attorney, that he fully understood the Plea Agreement, and that he understood he was waiving his right to appeal a sentence of 37 months' imprisonment or less. (A. 49-51). Because Bass's waiver was knowing and voluntary, and because Judge Cote in fact sentenced Bass to a term of imprisonment of 30 months, three years of supervised release, no fine, forfeiture in the amount of $220,432, restitution in the amount of $176,174.84, and a special assessment of $100, Bass has waived any challenge to his sentence. Accordingly, his appeal should be dismissed pursuant to the waiver.

36.     This Court has repeatedly held that waivers of the right to appeal are typically valid and enforceable. *See United States v. Borden*, 16 F.4th 351, 354 (2d Cir. 2021); *United States v. Coston*, 737 F.3d 235, 237 (2d Cir. 2013) (per curiam);

*United States v. Riggi,* 649 F.3d 143, 147-48 (2d Cir. 2011); *United States v. Lee*, 523 F.3d 104, 106 (2d Cir. 2008); *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000); *United States v. Difeaux*, 163 F.3d 725, 728 (2d Cir. 1998); *United States v. Djelevic*, 161 F.3d 104, 106-07 (2d Cir. 1998); *United States v. Maher*, 108 F.3d 1513, 1531 (2d Cir. 1997).

37. The circumstances under which this Court will decline to enforce a waiver are extremely limited. *See Gomez-Perez*, 215 F.3d at 319 ("The[] exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of our jurisprudence. Accordingly, we have upheld waiver provisions even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement."). As this Court noted in *Gomez-Perez*, the exceptions include situations

> when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence . . . .

*Id*.

38. Here, Bass's appellate counsel rightly concedes that Bass's plea and appellate waiver were knowing, voluntary, and competent. (Br. 19-23). As described

above, the record supports that concession. (*See supra* ¶¶ 17-25.). In particular, Judge Cote ensured that Bass was aware of the appeal waiver in the Plea Agreement, and had Bass confirm under oath that he understood he was waiving his right to appeal a prison sentence of 37 months or less. (A. 51).

39.     This case does not fit within any of the exceptions to the enforcement of appeal waivers. The Government did not breach the Plea Agreement, nor did Judge Cote base Bass's sentence—which was within the stipulated Guidelines range—on any impermissible factors.  Judge Cote also provided a rationale for the chosen sentence. (A. 80-82).

40.     To consider issues beyond the enforceability of the appellate waiver would undermine the plea bargaining process, the benefits of which this Court has long recognized:

> In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.

*United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam).

Accordingly, Bass's appeal from his sentence should be dismissed.

## POINT II

### Bass's Conviction and Sentence Should Be Summarily Affirmed Because There Are No Non-Frivolous Issues to Be Raised on Appeal

41.    Even if Bass's appeal were not barred by a valid and enforceable appellate waiver, there would be no non-frivolous arguments to be raised on appeal, and summary affirmance would be warranted. Bass's appellate counsel states, in a submission pursuant to *Anders*, that, "[t]he record has been thoroughly searched. The defendant's Constitutional and statutory rights were protected, both by his own counsel and by the District Court, as is clear from the record." (Br. 23). The Government agrees.

### A.    Bass Pleaded Guilty Knowingly, Voluntarily, and Competently

42.    There are no meritorious or non-frivolous issues Bass could raise in connection with his guilty plea. Bass's plea proceeding before Judge Cote complied with Rule 11 of the Federal Rules of Criminal Procedure. He pled guilty competently. Judge Cote made the findings necessary under the CARES Act to proceed remotely; ensured that Bass was competent to enter a guilty plea; informed Bass of the nature of the charge that was pending against him and of the maximum penalties he faced upon conviction; ensured that Bass was aware of the rights he was giving up by pleading guilty; confirmed that Bass understood the court's obligation to calculate the Guidelines and consider the Section 3553(a) factors; confirmed that Bass is a United States citizen; confirmed that Bass understood the appellate waiver;

determined that a factual basis supported Bass's guilty plea; and confirmed that Bass was pleading guilty of his own volition. (A. 35-62). On this record, Bass cannot validly claim that his plea was not knowing, voluntary, and competent.

**B.  Bass's Sentence Was Procedurally and Substantively Reasonable**

43.    There are no meritorious or non-frivolous issues that Bass could raise in connection with sentencing. Appellate review of a district court's sentence "encompasses two components: procedural review and substantive review." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). A district court commits procedural error at sentencing when it fails to calculate the Guidelines range (unless omission of the calculation is justified), makes a mistake in its Guidelines calculation, treats the Guidelines as mandatory, does not consider the factors in 18 U.S.C. § 3553(a), rests its sentence on a clearly erroneous finding of fact, or "fails adequately to explain its chosen sentence." *Id.* at 190; *see Gall v. United States*, 552 U.S. 38, 51 (2007). If the Court determines that there was no procedural error, it "should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51. The Court must "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion and bearing in mind the institutional advantages of district courts." *Cavera*, 550 F.3d at 190. The substantive unreasonableness standard "provide[s] a backstop for those few cases that, although

procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

44.    Bass's sentence was procedurally reasonable. Judge Cote confirmed that Bass and his counsel had read and discussed the Presentence Report, and that Bass had no objections. (A. 64). Judge Cote correctly calculated the Guidelines, consistent with the parties' Plea Agreement and with the Presentence Report. (A. 65). The record also makes clear that Judge Cote understood she was not bound by the Guidelines and considered the Section 3553(a) factors. (A. 48, 80-84).  Judge Cote gave defense counsel and Bass an opportunity to speak. (A. 69-80). And Judge Cote explained adequately her reasons for the sentence imposed. (A. 80-82).

45.    The within-Guidelines sentence of 30 months' imprisonment and three years' supervised release was also substantively reasonable.

46.    Judge Cote noted that Bass knew his conduct was wrong at the time, that he "made tens of thousands of dollars from it," and that "[i]t was a significant wrong . . . it wasn't just a mistake in judgment." (A. 81). She also noted that his presentence confinement was a result of his own actions, and that while the loss of his mother was a great loss, he was fortunate to have had a mother who loved him deeply and whom he loved deeply, as well as to have other family members who

17

cared about him and whom he cared about. (A. 80-81). In these circumstances, the sentence Judge Cote imposed at the bottom of the Guidelines range was not substantively unreasonable. *See United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (explaining that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances").

## C.    Bass Received Effective Assistance of Counsel

47.    Finally, Bass cannot make a non-frivolous claim of ineffective assistance of counsel on direct appeal. As the record shows, defense counsel effectively negotiated a Plea Agreement and represented Bass's interests at every stage of the proceedings. Defense counsel's performance cannot be said to have fallen below "an objective standard of reasonableness" under "prevailing professional norms," and Bass cannot demonstrate prejudice from the representation he received. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984).

48.    Bass stated at the time of his plea that he was satisfied with his attorney's representation. (A. 41). That satisfaction was well earned. For example, without the benefit of the Plea Agreement, Bass faced additional criminal exposure for the offense charged in Count One of the Indictment.

49.    Defense counsel also advocated vigorously on Bass's behalf throughout the case, which included advocacy at sentencing, during which counsel

demonstrated familiarity with Bass's very difficult upbringing, medical issues, and harsh conditions of confinement, and argued forcefully for a below-Guidelines sentence. (A. 69-75). While defense counsel did not persuade the District Court to impose a below-Guidelines sentence, he did obtain a sentence at the bottom of the Guidelines range.

50.     Furthermore, Bass cannot establish prejudice. Not only did Bass receive substantial benefits as part of his plea—namely, the dismissal of Count One and a reduction in his Guidelines offense level for accepting responsibility—but there is no suggestion in the record that, but for any purported ineffectiveness, he would have proceeded to trial. *See Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) ("To satisfy the second prong of *Strickland* in the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial.").

51.     In these circumstances, there is no non-frivolous claim that Bass's counsel rendered ineffective assistance. Moreover, to the extent a claim could be raised, it should be done through a motion under 28 U.S.C. § 2255, not direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance.").

## CONCLUSION

52.     Bass's waiver of his right to appeal should be given effect, and his

appeal should be dismissed. In the alternative, Bass's conviction and sentence should

be summarily affirmed because there are no meritorious and non-frivolous issues on

appeal.

Dated:          New York, New York
                November 1, 2022

/s/ Kevin Mead_____
Kevin Mead
Jun Xiang
Assistant United States Attorneys
Telephone: (212) 637-2211/2289

20

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this motion complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this motion, there are 4,278 words in this motion.

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   KEVIN MEAD
Assistant United States Attorney
(212) 637-2211